UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HELEN ELAINE WEST, <br><br>              Plaintiff, <br><br>      -against- <br><br> THE CITY OF NEW YORK; THE STATE OF NEW YORK, <br><br>              Defendants. | 17-CV-2369 (CM) <br><br> ORDER TO AMEND |

COLLEEN McMAHON, Chief United States District Judge:

Plaintiff, appearing *pro se*, brings this action asserting that Defendants' agents violated her civil rights and discriminated against her while she was housed in the shelter system. By order dated June 8, 2017, the Court granted Plaintiff's request to proceed without prepayment of fees, that is, *in forma pauperis*. For the reasons set forth below, the Court grants Plaintiff leave to file an amended complaint within sixty days of the date of this order.

**STANDARD OF REVIEW**

The Court must dismiss an *in forma pauperis* complaint, or portion thereof, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint when the Court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3). While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006) (internal quotation marks and citations omitted) (emphasis in original).

**BACKGROUND**

Plaintiff, a resident of the New York City shelter system and a former teacher with the New York City Department of Education ("DOE"), brings her claims on the Court's prisoner complaint form, invokes 42 U.S.C. § 1983, and names as defendants the City of New York and the State of New York. Plaintiff asserts that she is using the prisoner form complaint because she has "been a prisoner of the NYC shelter system & subjected to torture and ill treatment which falls under the 8th Amendment." (Compl. at 1.) She attributes the treatment to: (1) her unacknowledged status as a whistleblower, "as a result of [her] witnessing and reporting a [k]indergarten teacher slapping a [k]indergarten student"; and (2) her perceived Caucasian race, "although [she] is black, American-Indian, Polish, Irish, Scottish & either Lebanese or Syrian." (*Id*. at 4.) In particular, Plaintiff claims that she has been placed in shelters for persons who are diagnosed as mentally ill and chemically addicted ("MICA"), where the majority of the staff and residents are black or Hispanic and "resent a 'white' educated person" such as herself. (*Id*.) Plaintiff maintains that various agents of the defendants have been unwilling to help her, "did not want anyone to befriend [her], and seemed out to assassinate [her] character & place [her] in direct harm." (*Id*.) Plaintiff asserts that she has submitted multiple complaints to CAMBA[1] in connection with her housing in MICA facilities – including claims related to assaults, harassment, denial of a Bible, and denial of prescribed medications – but she has not received a response.

Plaintiff claims a litany of injuries, including [i]ncredible pain & suffering," PTSD, "depression & a feeling of hopelessness from not getting help," denial of sleep and oxygen, and

---

[1] CAMBA is a non-profit agency that provides social services to New Yorkers in need. *See* CAMBA, https://www.camba.org/ (last visited June 8, 2017).

an inability to pursue life, liberty, and happiness. (*Id.* at 5.) Plaintiff seeks monetary compensation and "suitable housing so [she] can heal." (*Id.*)

Plaintiff also attaches to the complaint documents from a pending state-court action and an administrative proceeding, and communications with an official and the police concerning her former employment with the DOE, her mental state, and placement in MICA housing by the New York City Department of Homeless Services ("DHS").

## DISCUSSION

Section 1983 allows an individual to bring suit against persons who, acting under color of state law, have caused her to be "depriv[ed] of any rights, privileges, or immunities secured by the Constitution and laws of the United States."  42 U.S.C. § 1983; *West v. Atkins*, 487 U.S. 42, 48 (1988). To state a claim for relief under § 1983, a plaintiff must allege both that: (1) a right secured by the Constitution or laws of the United States was violated, and (2) the right was violated by a person acting under the color of state law.  *West*, 487 U.S. at 48.

### A.     State of New York

"[A]s a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity, or unless Congress has abrogated the states' Eleventh Amendment immunity . . . ." *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009). "The immunity recognized by the Eleventh Amendment extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state." *Id*. New York has not waived its Eleventh Amendment immunity to suit in federal court, and Congress did not abrogate the states' immunity in enacting 42 U.S.C. § 1983. *See Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 40 (2d Cir. 1977). Plaintiff's § 1983 claims against the State of New York are therefore barred by the Eleventh Amendment and are dismissed.

**B.      City of New York**

When a plaintiff sues a municipality, such as the City of New York, under § 1983, it is not enough for the plaintiff to allege that one of the municipality's employees or agents engaged in some wrongdoing. The plaintiff must show that the municipality itself caused the violation of the plaintiff's rights. *See Connick v. Thompson,* 131 S. Ct. 1350, 1359 (2011) ("A municipality or other local government may be liable under this section [1983] if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation.") (quoting *Monell v. Dep't of Soc. Servs. of City of New York,* 436 U.S. 658, 692 (1978)); *Cash v. Cnty. of Erie,* 654 F.3d 324, 333 (2d Cir. 2011). In other words, to state a § 1983 claim against a municipality, the plaintiff must allege facts showing: (1) the existence of a municipal policy, custom, or practice, and (2) that the policy, custom, or practice caused the violation of the plaintiff's constitutional rights. *See Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012); *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown,* 520 U.S. 397, 403 (1997) (internal citations omitted).

The complaint does not contain any facts suggesting that the events underlying this complaint arose from a municipal policy, custom, or practice such that the City of New York must be held liable. Plaintiff may amend her complaint to plead facts showing that the City's policies, customs, or practices caused the alleged violation of her rights.

**C.      Eighth Amendment Claims**

Plaintiff's primary claim that DHS placed her in MICA facilities where she was subjected to torture and ill treatment in violation of the Eighth Amendment, must be dismissed. The Eighth Amendment's protections against cruel and unusual punishment apply only to criminal and certain civil punishment imposed by the government. *See Austin v. United States,* 509 U.S. 602, 609 (1993). As Plaintiff was not in custody pursuant to a criminal conviction or other punishment

imposed by the government, she fails to state a claim under the Eighth Amendment. *See Jenkins v. N.Y.C. Dep't of Homeless Servs.*, 643 F. Supp. 2d 507, 511-12 (S.D.N.Y. 2009).

### D.   Due Process Claims

Plaintiff's assertions concerning her placement in MICA facilities and accompanying ills could be read as claims under the Due Process Clause of the Fourteenth Amendment. The Due Process Clause imposes procedural safeguards on "governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of . . . the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). However, there is no "property" or "liberty" interest protected by the Due Process Clause unless an individual has a "legitimate claim of entitlement" in a benefit. *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1978). Although there is a general right to shelter in New York, this right is not a "'boundless . . . entitlement' and may be subject to eligibility requirement and other limitations." *Jenkins*, 643 F. Supp. 2d at 512. Government officials have broad discretion in assigning the homeless to shelters. *See id*. Because Plaintiff does not have a property right to placement in a particular type of shelter, *see Gomez v. Toledo*, 446 U.S. 635, 640 (1980), her placement in MICA facilities did not deprive her of a protected liberty or property interest.

Even if Plaintiff had asserted a liberty or property interest in placement in a particular type of shelter, her due process claims must still be dismissed. "The fundamental requisite of due process of law is the opportunity to be heard . . . at a meaningful time and in a meaningful manner." *Goldberg v. Kelly*, 397 U.S. 254, 267 (1970) (citations omitted). Where the government deprives a plaintiff of some interest pursuant to an established procedure,[2] due process is

---

[2] Conduct is undertaken in accordance with established state procedures when, for example, it is "pursuant to a statute, code, regulation, or custom" or is the result of a decision made by a high-ranking official with "final authority over significant matters," *see Viteritti v. Inc.*

generally satisfied so long as some form of hearing is provided before the individual is finally

deprived of the property interest. *Nnebe v. Daus*, 644 F.3d 147, 158 (2d Cir. 2011). By contrast, a

government employee's random and unauthorized act does not violate due process if a

meaningful postdeprivation remedy is available; when the government cannot predict precisely

when the loss will occur, it would be impossible to provide a meaningful hearing *before* the

deprivation of property. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1986); *Parratt v. Taylor*, 451

U.S. 527, 540-43 (1981), *overruled in part on other grounds by Daniels v. Williams*, 474 U.S.

327, 220-31 (1986); *see also Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101

F.3d 877, 882 (2d Cir. 1996) ("[T]here *is no* constitutional violation (and no available § 1983

action) when there is an adequate state postdeprivation procedure to remedy a random, arbitrary

deprivation of property or liberty.").

Plaintiff fails to allege facts suggesting that she was deprived of a liberty or property

interest without due process. The New York City Administrative Code provides for a hearing to

challenge placement in a shelter. 18 N.Y.C.R.R. § 358-3.1. Plaintiff asserts that she submitted

multiple complaints to various entities, and she attaches to her pleading copies of documents

from both state-court and administrative proceedings relating to her MICA facilities. As there are

adequate state procedures in place to address Plaintiff's claims, she has not alleged facts

suggesting that she was deprived of any liberty or property interest without due process of law.

Plaintiff's due process claim must be dismissed for failure to state a claim on which relief may be

granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

---

*Vill. of Bayville*, 918 F. Supp. 2d 126, 134 (E.D.N.Y. 2013) (citing *Chase Grp. Alliance LLC v.
City of New York Dep't of Fin.,* 620 F.3d 146, 152 n.3 (2d Cir. 2010)).

Plaintiff's assertions that she was subjected to torture and ill treatment while in the shelter system and did not receive staff assistance also fail to state claims for deprivation of due process. The government does not have a general duty under the Constitution to protect an individual from harm. *See DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195-96 (1989). The Second Circuit has recognized two exceptions to this general rule: (1) " when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being," *id.* at 200; and (2) when the government affirmatively creates or increases danger it assumes some obligations, *see Dwares v. City of N.Y.*, 985 F.2d 94, 98-99 (2d Cir. 1993). The first exception is inapplicable here because Plaintiff is not in custody. The second exception – the state-created danger theory – generally applies where state actors facilitate harm, such as " where police officers told skinheads that they would not prevent them from beating up protesters in the park . . . [or] where a prison guard told inmates that it was ' open season' on a prisoner, and the inmates beat up the prisoner." *Matican v. City of N.Y.*, 524 F.3d 151, 155 (2d Cir. 2008).

Even accepting Plaintiff's assertions as true, she fails to state facts showing that Defendants violated any duty to her arising under the Constitution. The government neither prevented Plaintiff from acting on her own behalf in obtaining alternative housing nor facilitated harm to her. *See, e.g., DeShaney*, 489 U.S. at 193. Plaintiff therefore fails to state plausible due process claims relating to her housing in the shelter system.

### E.      Discrimination Claims

#### 1.      Equal Protection

Plaintiff's claim that Defendants' agents engaged in reverse discrimination because of her perceived race may be construed as arising under the Fourteenth Amendment's Equal Protection Clause. The Equal Protection Clause essentially prohibits the disparate treatment of similarly

situated individuals. *See City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985); *Brown v. City of Syracuse*, 673 F.3d 141, 151 (2d Cir. 2012). To state an equal protection violation, "claimants must prove purposeful discrimination directed at an identifiable or suspect class." *Giano v. Senkowski*, 54 F. 3d 1050, 1057 (2d Cir. 1995) (citations omitted). While a successful equal protection claim commonly requires an allegation that the aggrieved party is a member of a protected class, "a plaintiff can proceed as a 'class-of-one' by establishing that she 'has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" *Holmes v. Haugen,* 356 F. App' x 507, 509 (2d Cir. 2009) (quoting *Vill. of Willowbrook v. Olech,* 528 U.S. 562, 564 (2000)).

Plaintiff alleges that Defendants' agents engaged in reverse discrimination because of her perceived race but fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plaintiff asserts that the majority of the staff and clients at MICA facilities are black or Hispanic, claims that she was perceived as white, and concludes that staff members resented her, refused to assist her, and placed her in harm's way because of her perceived race. There is no allegation in the complaint of "similarly situated" individuals who were treated differently from the way Plaintiff was treated, or any facts that connect the alleged torture, ill treatment, and overall harassment to her race. *See, e.g.*, *Kitchen v. Phipps Houses Grp. of Cos.*, 380 F. App'x 99, 101 n. 2 (2d Cir. 2010) (summary order) (affirming dismissal of discrimination claims where plaintiff failed to "plead some facts that plausibly link [the conduct complained of] ... to race or disability bias").

Because Plaintiff does not assert specific facts concerning the alleged reverse discriminatory conduct, it is unclear whether such claims under the Equal Protection Clause can proceed. In an abundance of caution and because Plaintiff is proceeding *pro se*, the Court grants

her leave to submit an amended complaint asserting any facts showing that a state actor within the shelter system discriminated against her because of her race. Plaintiff should include in the amended complaint any facts showing that she is a member of a protected class and was subject to purposeful discrimination, or that she was treated different from other similarly situated individuals.

2. 42 U.S.C. § 1981

Plaintiff's allegations may suggest a possible claim under 42 U.S.C. § 1981. Section1981 prohibits discrimination on the basis of race in the making and enforcement of contracts. *Patterson v. Cnty. of Oneida, N.Y.*, 375 F.3d 206, 224 (2d Cir. 2004). Generally, to state a claim under § 1981, a plaintiff must allege that: (1) she is a member of a racial minority;[3] (2) the defendants intended to discriminate on the basis of race; and (3) the discrimination concerns one of the statute's enumerated activities. *Brown v. City of Oneonta*, 221 F.3d 329, 339 (2d Cir. 2000); *see also Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006) (A plaintiff is entitled to relief under § 1981 "when racial discrimination blocks the creation of a contractual relationship . . . [or] impairs an existing contractual relationship."). The Supreme Court has made it clear that § 1981 supports a claim of reverse discrimination. *See McDonald v. Santa Fe Trail Transportation Co.*, 427 U.S. 273, 295–96 (1976); *see also Keating v. Carey*, 706 F.2d 377, 383

---

[3] Because Plaintiff's claim is based on the perception that she is not a member of a racial minority, her claims may be subject to a slightly different analysis. Most courts have applied the *McDonnell Douglas* burden-shifting framework used in analyzing discrimination claims arising under Title VII, to claims of reverse discrimination under § 1981. *See Parker v. Baltimore & Ohio R.R. Co.*, 652 F.2d 1012, 1017, (D.C. Cir. 1981) (holding that a plaintiff alleging "reverse discrimination" may rely on the *McDonnell Douglas* criteria "to prove a prima facie case of intentional disparate treatment when background circumstances support the suspicion that the defendant is that unusual employer who discriminates against the majority"); *see also Broich v. Incorporated Vill. of Southampton*, 462 Fed. Appx. 39, 44 (2d Cir. 2012) (finding that a white male plaintiff established a prima facie case of race discrimination pursuant to § 1981 under the first step of the McDonnell Douglas burden-shifting framework).

n. 9 (2d Cir. 1983) (Section 1981 "protect[s] all persons, including whites, from discrimination

on account of race.") (citation and internal quotation marks omitted). To prevail on a § 1981

claim, evidence of racially discriminatory intent is required. *See Patterson*, 375 F.3d at 226; *Gant*

*ex rel. Gant v. Wallingford Bd. of Educ.*, 195 F.3d 134, 139-40 (2d Cir. 1999).

As noted above, Plaintiff fails to allege facts suggesting that any shelter staff member

discriminated against her because of her race. Should Plaintiff amend her complaint, she should

state any facts showing that she was subjected to racial discrimination in the shelter system in

violation of § 1981.

3.      The Fair Housing Act

The Court also evaluates whether Plaintiff has a possible claim under Fair Housing Act

("FHA"), 42 U.S.C. § 3601, *et* seq. The FHA provides, in relevant part, that "it shall be unlawful

. . . (a) [t]o refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for

the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of

race, color, religion, sex, familial status, or national origin" or "(b) [t]o discriminate against any

person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of

services or facilities in connection therewith, because of race, color, religion, sex, familial status,

or national origin." 42 U.S.C. § 3604. Although the FHA's definition of dwelling could arguably

be interpreted to include homeless shelters, *see Jenkins*, 643 F. Supp. 2d at 517-18, *aff'd on other*

*grounds*, 391 Fed. Appx. 81 (2d Cir. 2010), Plaintiff fails to assert a plausible claim under the

FHA.

In large part, Plaintiff brings this complaint to challenge her placement in MICA

facilities. She does not allege that DHS did not "make available or deny, a dwelling," 42 U.S.C.

§ 3604(f)(1), to her in violation of the FHA. Plaintiff's disagreement with DHS's decision to

offer her placement in MICA − which may be based on her mental state[4] – fails to state a claim

for relief under the FHA. *See Jenkins v. NYC Dep't of Homeless Servs.*, 391 Fed. Appx. 81, 82

(2d Cir. 2010). The FHA provides that "[n]othing in [42 U.S.C. § 3604(f)(9)] requires that a

dwelling be made available to an individual whose tenancy would constitute a direct threat to the

health or safety of other individuals . . . ." 42 U.S.C. § 3604(f)(9). To the extent Plaintiff's

assertions could be read as implicating the FHA, the Court dismisses the claim for failure to state

a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

**F.     Retaliation Claim**

Plaintiff also claims that the shelter staff's treatment of her was motivated by her

unacknowledged status as a whistleblower who reported a teacher slapping a kindergarten

student. To the extent Plaintiff's assertion could be read as a retaliation claim under the First

Amendment, it must be dismissed. The First Amendment prohibits government officials from

subjecting an individual to retaliatory actions for exercising his right to free speech under the

First Amendment. *Hartman v. Moore*, 547 U.S. 250, 256 (2006)). To state a First Amendment

retaliation claim, "a plaintiff must show: (1) she has a right protected by the First Amendment;

(2) the defendant's actions were motivated or substantially caused by plaintiff's exercise of that

right; and (3) the defendant's actions caused her some injury." *Smith v. Campbel*l, 782 F.3d 93,

100 (2d Cir. 2015) (citation and internal quotation marks omitted); *see also Mt. Healthy School

District v. Doyle*, 429 U.S. 274, 287 (1977).

Plaintiff also fails to allege plausible facts suggesting that the shelter staff's conduct was

either motivated or substantially caused by her First Amendment activity. Because Plaintiff does

---

[4] In the state-court papers attached to the complaint, Plaintiff challenges a diagnosis of mental illness, which may be the basis for her placement in MICA facilities. (*See* Compl. at 7-13.)

not allege any causal connection between her whistleblowing and any event that occurred while she was a resident of the shelter system, she fails to state a plausible claim of retaliation. Plaintiff's retaliation claim is therefore dismissed. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

**G.     Application for the Court to Request Counsel**

Plaintiff submits an application for the Court to request counsel under the Criminal Justice Act ("CJA"), 18 U.S.C. § 3006A(g), which permits the Court to appoint CJA counsel in *habeas corpus* cases where "the interests of justice so require." As Plaintiff does not seek *habeas corpus* relief, the Court construes the submission as an application for the Court to appoint *pro bono* counsel.

The factors to be considered in ruling on an indigent litigant's request for counsel include the merits of the case, Plaintiff's efforts to obtain a lawyer, and Plaintiff's ability to gather the facts and present the case if unassisted by counsel. *See Cooper v. A. Sargenti Co.*, 877 F.2d 170, 172 (2d Cir. 1989); *Hodge v. Police Officers,* 802 F.2d 58, 60-62 (2d Cir. 1986). Of these, the merits are "[t]he factor which command[s] the most attention." *Cooper*, 877 F.2d at 172. Because it is too early in the proceedings for the Court to assess the merits of the action, Plaintiff's motion for counsel is denied without prejudice to renewal at a later date.

**LEAVE TO AMEND**

Plaintiff is granted leave to amend her complaint to detail her discrimination assertions to state possible discrimination claims under the Equal Protection Clause or § 1981. First, Plaintiff must name as the defendant(s) in the caption[5] and in the statement of claim those individuals

---

[5] The caption is located on the front page of the complaint. Each individual defendant must be named in the caption. Plaintiff may attach additional pages if there is not enough space to list all of the defendants in the caption. If Plaintiff needs to attach an additional page to list all defendants, she should write "see attached list" on the first page of the Amended Complaint. Any defendants named in the caption must also be discussed in Plaintiff's statement of claim.

who were allegedly involved in the deprivation of her federal rights. If Plaintiff does not know

the name of a defendant, he may refer to that individual as "John Doe" or "Jane Doe" in both the

caption and the body of the amended complaint.[6] The naming of John Doe defendants, however,

does *not* toll the three-year statute of limitations period governing this action and Plaintiff shall

be responsible for ascertaining the true identity of any "John Doe" defendants and amending her

complaint to include the identity of any "John Doe" defendants before the statute of limitations

period expires.[7]

      In the statement of claim, Plaintiff must provide a short and plain statement of the

relevant facts supporting each claim against each defendant named in the amended complaint.

Plaintiff is also directed to provide the addresses for any named defendants. To the greatest

extent possible, Plaintiff's amended complaint must:

    a)  give the names and titles of all relevant persons;

    b)  describe all relevant events, stating the facts that support Plaintiff's case including what each defendant did or failed to do;

    c)  give the dates and times of each relevant event or, if not known, the approximate date and time of each relevant event;

    d)  give the location where each relevant event occurred;

    e)  describe how each defendant's acts or omissions violated Plaintiff's rights and describe the injuries Plaintiff suffered; and

    f)  state what relief Plaintiff seeks from the Court, such as money damages, injunctive relief, or declaratory relief.

---

[6] For example, a defendant may be identified as: "Police Office John Doe #1 on duty May 31, 2017, at the New York City Police Department-7th Precinct, during the 7-3 p.m. shift."

[7] Should Plaintiff seek to add a new claim or party after the statute of limitations period has expired, she must meet the requirements of Rule 15(c) of the Federal Rules of Civil Procedure.

Essentially, the body of Plaintiff's amended complaint must tell the Court: who violated her federally protected rights; what facts show that her federally protected rights were violated; when such violation occurred; where such violation occurred; and why Plaintiff is entitled to relief. Because Plaintiff's amended complaint will completely replace, not supplement, the original complaint, any facts or claims that Plaintiff wishes to maintain must be included in the amended complaint.

## CONCLUSION

The Clerk of Court is directed to assign this matter to my docket, mail a copy of this order to Plaintiff, and note service on the docket. The Court dismisses Plaintiff's claims against the State of New York. Plaintiff is granted leave to file an amended complaint that complies with the standards set forth above. Plaintiff must submit the amended complaint to this Court's Pro Se Intake Unit within sixty days of the date of this order, caption the document as an "Amended Complaint," and label the document with docket number 17-CV-2369 (CM). An Amended Complaint form is attached to this order. No summons will issue at this time. If Plaintiff fails to comply within the time allowed and cannot show good cause to excuse such failure, the complaint will be dismissed for failure to state a claim upon which relief may be granted. The Court also denies Plaintiff's application for counsel (ECF No. 3) without prejudice to renewal at a later date.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an

appeal. *Cf. Coppedge v. United States*, 369 U.S. 438, 444-45 (1962) (holding that an appellant

demonstrates good faith when he seeks review of a nonfrivolous issue).

SO ORDERED.

Dated:   June 26, 2017
         New York, New York

_____
              COLLEEN McMAHON
         Chief United States District Judge

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

_____

_____

Write the full name of each plaintiff.


-against-

_____

_____

_____

_____

Write the full name of each defendant. If you need more space, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed above must be identical to those contained in Section II.

_____CV_____

(Include case number if one has been assigned)

## AMENDED

## COMPLAINT

Do you want a jury trial?
☐ Yes    ☐ No

---

**NOTICE**

The public can access electronic court files. For privacy and security reasons, papers filed with the court should therefore *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number. See Federal Rule of Civil Procedure 5.2.

---

## I.   BASIS FOR JURISDICTION

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation, and the amount in controversy is more than $75,000, is a diversity case. In a diversity case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal-court jurisdiction in your case?

☐   **Federal Question**

☐   **Diversity of Citizenship**

## A.   If you checked Federal Question

Which of your federal constitutional or federal statutory rights have been violated?

_____

_____

_____

_____

## B.   If you checked Diversity of Citizenship

### 1.   Citizenship of the parties

Of what State is each party a citizen?

The plaintiff , _____ , is a citizen of the State of
                     (Plaintiff's name)

_____
(State in which the person resides and intends to remain.)

or, if not lawfully admitted for permanent residence in the United States, a citizen or subject of the foreign state of

_____ .

If more than one plaintiff is named in the complaint, attach additional pages providing information for each additional plaintiff.

If the defendant is an individual:

The defendant, _____, is a citizen of the State of
(Defendant's name)

_____

or, if not lawfully admitted for permanent residence in the United States, a citizen or
subject of the foreign state of

_____.

If the defendant is a corporation:

The defendant, _____, is incorporated under the laws of

the State of _____

and has its principal place of business in the State of _____

or is incorporated under the laws of (foreign state) _____

and has its principal place of business in _____.

If more than one defendant is named in the complaint, attach additional pages providing
information for each additional defendant.

## II. PARTIES

## A.  Plaintiff Information

Provide the following information for each plaintiff named in the complaint. Attach additional
pages if needed.

_____

First Name                    Middle Initial          Last Name

_____

Street Address

_____

County, City                              State                    Zip Code

_____

Telephone Number                          Email Address (if available)

## B.   Defendant Information

To the best of your ability, provide addresses where each defendant may be served. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are the same as those listed in the caption. Attach additional pages if needed.

Defendant 1:

First Name                        Last Name

Current Job Title (or other identifying information)

Current Work Address (or other address where defendant may be served)

County, City                              State                    Zip Code

Defendant 2:

First Name                        Last Name

Current Job Title (or other identifying information)

Current Work Address (or other address where defendant may be served)

County, City                              State                    Zip Code

Defendant 3:

First Name                        Last Name

Current Job Title (or other identifying information)

Current Work Address (or other address where defendant may be served)

County, City                              State                    Zip Code

Defendant 4:

_____
First Name                          Last Name

_____
Current Job Title (or other identifying information)

_____
Current Work Address (or other address where defendant may be served)

_____
County, City                        State              Zip Code

## III. STATEMENT OF CLAIM

Place(s) of occurrence: _____


Date(s) of occurrence: _____

## FACTS:

State here briefly the FACTS that support your case. Describe what happened, how you were harmed, and what each defendant personally did or failed to do that harmed you. Attach additional pages if needed.

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**INJURIES:**

If you were injured as a result of these actions, describe your injuries and what medical treatment, if any, you required and received.

_____

_____

_____

_____

_____

## IV. RELIEF

State briefly what money damages or other relief you want the court to order.

_____

_____

_____

_____

_____

## V.  PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I agree to notify the Clerk's Office in writing of any changes to my mailing address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

| Dated | Plaintiff's Signature |

| First Name | Middle Initial | Last Name |

| Street Address |

| County, City | State | Zip Code |

| Telephone Number | Email Address (if available) |

I have read the Pro Se (Nonprisoner) Consent to Receive Documents Electronically:

☐ Yes     ☐ No

If you do consent to receive documents electronically, submit the completed form with your complaint. If you do not consent, please do not attach the form.